IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRUCE E. PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV526 |
| | ) | |
| CHOICE ENDEAVORS, INC., and | ) | |
| FRANKLIN D. BARMORE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION

TILLEY, Chief Judge

    This suit arises from a dispute between Plaintiff Bruce E. Perez and Defendants Choice Endeavors, Inc. and Franklin D. Barmore (collectively "Choice Endeavors"), regarding the sale of a 1998 Jaguar. This case is before the Court on (1) Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) [Doc. #6]; and (2) Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. #8].

I.

    The facts in the light most favorable to the Plaintiff are as follows: On or about May 10, 2004, Mr. Perez, a resident of Virginia, test-drove a 1998 Jaguar owned by Choice Endeavors in North Carolina. During the test-drive, Mr. Perez noticed the vehicle was not idling properly and inquired about this problem with the

salesman.[1] After discussing the issue with Mr. Barmore, Choice Endeavors' owner, the salesman told Mr. Perez that the "vehicle was running rough because of the 'air flow regulator,' that he would check into it, and take care of it." (Compl. ¶ 6.) Based upon this representation, Mr. Perez purchased the vehicle for $16,288.16.[2]

On or about October 26, 2004, Mr. Perez received a notice of recall from Jaguar. He took the vehicle to Bob Dunn Jaguar in Greensboro, North Carolina. When he arrived, the service technicians recognized the vehicle and without looking at the car told him that the engine was defective and needed to be replaced. When Mr. Perez asked how they knew this, he was shown a Choice Endeavors' repair invoice dated April 29, 2004. Mr. Perez then paid $487.60 to Bob Dunn Jaguar to inspect the vehicle. Again, Bob Dunn Jaguar confirmed that the compression was low and the engine worn out.

Mr. Perez then contacted Choice Endeavors about the engine problem. However, Choice Endeavors refused to pay for any repairs. Mr. Perez filed suit in the Middle District of North Carolina on June 10, 2005 alleging fraud and unfair and deceptive trade practices [Doc. #2]. On July 27, 2005, Choice Endeavors filed a Motion to Dismiss for lack of federal jurisdiction [Doc. #6]; and a Motion to Dismiss for failure to state a claim upon which relief can be granted [Doc. #8]. Mr.

---

[1] Although Mr. Perez does not identify which salesman he spoke to, he believes it was one of the following employees/agents of Choice Endeavors: Rochelle Barmore, Steven Mays, Travis Johnson, and/or Robert Ramon.

[2] Mr. Perez also paid $486.84 in taxes and a $285.00 document fee.

2

Perez filed his Opposition to these motions on August 30 and August 31, 2005 [Docs. #12 & 13].

## II.

Defendants first request Plaintiff's claim be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction; they can hear only cases authorized by the Constitution or by statute. See U.S. Const. Art. 3 § 2; 28 U.S.C. §§ 1330-1368. Unless the case involves specialized issues such as admiralty or patents, a federal district court typically will have jurisdiction only if the requirements of 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1332 (diversity of citizenship) are satisfied. Because Mr. Perez' claim arise entirely under state law, the basis for federal subject matter jurisdiction, if any, must arise under diversity jurisdiction.

A case falls within the federal court's diversity jurisdiction if (1) the diversity of citizenship of the parties is complete: no one plaintiff and defendant are citizens of the same state, and (2) the amount in controversy exceeds $75,000. 18 U.S.C. § 1332; Wisconsin Dept. of Corr. v. Schacht, 524 U.S. 381, 388, 118 S. Ct. 2047 (1998). The party seeking federal jurisdiction, here, Mr. Perez, has the burden of establishing that subject matter exists. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). Choice Endeavors agrees the parties are diverse – Mr. Perez is a resident of Virginia; Choice Endeavors and Mr. Barmore are residents of North Carolina (Answer ¶ 1,2.) – but moves for dismissal contending Mr. Perez

3

has not met the jurisdictional amount of $75,000.

Although his compensatory damages are at most $11,988,[3] Mr. Perez contends the Complaint also alleges $200,000 in punitive damages (Id. ¶ 23). However, "the plaintiff's allegations of requisite jurisdictional amount are not necessarily dispositive of the case." Missouri ex rel. v. Western Sur. Co., 51 F.3d 170, 173 (8th Cir. 1995). If it is apparent, to a "legal certainty," that the plaintiff cannot recover the amount claimed," the district court is not bound by that amount. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S. Ct 586, 590 (1938).

In this case, Mr. Perez' calculation of the jurisdictional amount consists of almost entirely of punitive damages. Although punitive damages, if permitted under the controlling law, should be included in determining whether the jurisdiction amount is satisfied, A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991), such damage claims require closer scrutiny, see, e.g., Bewley v. Sims, 438 F. Supp. 708, 711-12 (1977) ("[A] claim for punitive damages will be scrutinized even more carefully than would a claim for actual damages."); Missouri

---

[3] Under North Carolina law, "when a plaintiff sues to recover damages for deceit he should be recompensed in damages to the extent of placing him in as good a position as he would have occupied if the contract had been as represented." Sykes v. Life Ins. Co., 61 S.E. 610 (N.C. 1908); see also Godfrey v. Res-Care, Inc., 598 S.E.2d 396, 404 (N.C. Ct. App. 2004). Here, the Complaint alleges Mr. Perez paid Bob Dunn Jaguar approximately $488 to recheck the vehicle (Compl. ¶ 10), and that the vehicle needed $11,500 in repairs (Id. at ¶ 18) totaling $11,988.

4

ex rel., 51 F.3d at 173 ("When determining the amount in controversy, we scrutinize a claim for punitive damages more closely than a claim for action damages to ensure that Congress' limits on diversity jurisdiction are properly observed.").

Under North Carolina law, punitive damages are available for Mr. Perez' fraud claim. See N.C. Gen. Stat. § 1D-15. Several state statutes are instructive for the purpose of evaluating the reasonableness of a punitive damages award under North Carolina law. For example, North Carolina General Statute § 1D-25 caps punitive damage awards at "three times the amount of compensatory damages or two hundred and fifty thousand dollars ($250,000), whichever is greater." N.C. Gen. Stat. § 1D-25(b); Ryne v. K-Mart Corp., 594 S.E.2d 1, 17-18 (N.C. 2004). Additionally, when a car dealer alters or misrepresents the mileage on a motor vehicle odometer, the North Carolina Vehicle Mileage Act provides for damages of three times the actual damages sustained and reasonable attorney fees. See N.C. Gen. Stat. § 20-348; Roberts v. Buffaloe, 258 S.E.2d 861, 863 (N.C. Ct. App. 1979). Here, Mr. Perez' compensatory damage claim is at most $11,988: less than one-sixth of the $75,000 amount in controversy requirement. Thus, even if treble damages are awarded, Mr. Perez falls short of the jurisdictional minimum.[4] See, e.g., Brooks v. Chrysler Fin. Co., 2005 WL 2122651, at *2

---

[4] Although Mr. Perez also may be entitled to treble damages under his unfair and deceptive trade practice claim, it is well-settled in North Carolina that a party may not recover both treble and punitive damages. Accord Compton v. Kirby, 577

(M.D.N.C. Aug. 31, 2005) (dismissing claim when actual damages of $17,523.49 were significantly less than one-third of the $75,000 amount in controversy); Dunlap v. Green Tree Serv., LLC, 2005 WL 3177881, at *2 (S.D. W. Va. Nov. 28, 2005) (finding the amount in controversy did not approach $75,000, even with punitive damages, when compensatory damages totaled less than $4,500).

Any award of punitive damages, even if recoverable under North Carolina law, must also comport with the prohibition in the Due Process Clause of the Fourteenth Amendment on "grossly excessive or arbitrary punishments on a tortfeasor." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519-20 (2003) (citing Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433, 121 S. Ct. 1678, 1684 (2001) ("Despite the broad discretion that States possess with respect to the imposition of criminal penalties and punitive damages, the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits on that discretion.")); see also BMW of North Am. v. Gore, 517 U.S. 559, 581, 116 S. Ct. 1589, 1602 (1996) (instructing courts to consider three guideposts when reviewing the constitutionality of punitive damage awards: "(1) the degree of the reprehensibility of the defendant's misconduct; (2) the disparity between the actual

---

S.E.2d 905, 918 (N.C. Ct. App. 2003) ("[P]laintiffs may receive punitive damages or be awarded treble damages, but may not have both."). Thus, in evaluating whether the amount in controversy requirement has been satisfied, a court considers punitive damages and treble damages as alternative potential recoveries. Id.

or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in a comparable case"). Although the Supreme Court has refrained from providing a bright-line ratio which punitive damages cannot exceed, see id. at 425, it has suggested "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety," Pacific Mut. Life Ins. v. Haslip, 499 U.S. 1, 23-24, 111 S. Ct. 1032, 1046 (1991); see also Gore, 517 U.S. at 581 (citing 4 to 1 ratio). In this case, even if Mr. Perez' alleged compensatory damages were multiplied by six, the amount in controversy would still fall short of the jurisdictional minimum.

Because Mr. Perez failed to show that the amount in controversy exceeds $75,000, this case will be dismissed for lack of subject matter jurisdiction. See Fed. R. Civ. Pro. § 12(b)(1).

III.

For the foregoing reasons, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of diversity jurisdiction [Doc. #6] will be GRANTED and this case will be DISMISSED. Thus, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. #8] is MOOT.

This the day of April 12, 2006

                                                     /s/ N. Carlton Tilley, Jr.
                                                    United States District Judge